UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
RAMEL WHEELER,

                          Plaintiff,

           -against-

CITY OF NEW YORK; Police Officer MICHAEL WALSH, Shield No. 17054; Police Officer ANGELO PIZZARO, Shield No. 29275; Police Officer JERMAINE TAYLOR, Shield No. 23344; Sergeant DIANA PICHARDO, Shield No. 2816; Police Officer GAET JEANS DOXY, Shield No. 13488; Police Officer MIKE IZZO, Shield No. 4225; Police Officer ANSARI KALIL, Shield No. 11189; and JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                         Defendants.
------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## RELATED CASE

5. Pursuant to Local Civil Rule 1.6(a) and Rule 50.3.1 of the Guidelines for the Division of Business Among District Judges of the Eastern District, plaintiff respectfully informs the Court that this case is related to the pending civil action *Donald Franks v. City of New York, et al.*, 13 CV 623 (VMS) (JBW).

6. The cases arise from the same transaction, to wit, the mass arrest on October 31, 2012, of 16 minority men for the alleged looting of a Key Foods Supermarket in Coney Island, Brooklyn in the immediate aftermath of Hurricane Sandy.

7. As such, the cases involve virtually identical factual and legal issues. Mr. Franks and Mr. Wheeler were arrested together by the same defendant police officers for allegedly looting the same supermarket at the same time, and suffered similar damages. In police and prosecution paperwork, they were each alleged to have acted in concert during the commission of the crime, described as an "apprehended other."

8. The party and non-party witnesses in both cases will overlap.

9. The Court in *Franks* has already adjudicated a variety of applicable discovery issues and, consequently, there will be a considerable saving of judicial resources if the Hon. Jack B. Weinstein and Hon. Vera M. Scanlon are also assigned to this case.

## JURY DEMAND

10. Plaintiff demands a trial by jury in this action.

## PARTIES

11. Plaintiff Ramel Wheeler ("plaintiff" or "Mr. Wheeler") is a resident of Kings County in the City and State of New York.

12. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

13. Defendant Police Officer Michael Walsh, Shield No. 17054 ("Walsh"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Walsh is sued in his individual and official capacities.

14. Defendant Police Officer Angelo Pizzaro, Shield No. 29275 ("Pizzaro"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Pizzaro is sued in his individual and official capacities.

15. Defendant Police Officer Jermaine Taylor, Shield No. 23344 ("Taylor"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Taylor is sued in his individual and official capacities.

16. Defendant Sergeant Diana Pichardo, Shield No. 2816 ("Pichardo"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Pichardo is sued in her individual and official capacities.

17. Defendant Police Officer Gaet Jeans Doxy, Shield No. 13488 ("Doxy"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Doxy is sued in his individual and official capacities.

18. Defendant Police Officer Mike Izzo, Shield No. 4225 ("Izzo"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Izzo is sued in his individual and official capacities.

19. Defendant Police Officer Ansari Kalil, Shield No. 11189 ("Kalil"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Kalil is sued in his individual and official capacities.

20. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

21.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD.  Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

22.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

23.     At approximately 11:00 p.m. on October 31, 2012, in the immediate aftermath of Hurricane Sandy, plaintiff was lawfully walking in the vicinity of 3485 Neptune Avenue in the Coney Island neighborhood of Brooklyn, New York.

24.     The neighborhood was without power, and Mr. Wheeler was going to meet his father, Robert Wheeler, who was with plaintiff's grandmother at their apartment at 3325 Neptune Avenue.

25.     Given the circumstances, plaintiff had arranged to meet his father downstairs.

26.     As Mr. Wheeler reached his father's building, he encountered some of the defendant police officers, who detained and questioned him.

27.     Plaintiff explained that he was meeting his father.

28.     The officers unlawfully searched him, punched him, threw him to the ground, tightly handcuffed and falsely arrested him.  His father, who happened upon

plaintiff's arrest while it was in progress, was also falsely arrested.

29. No contraband was ever recovered from Mr. Wheeler.

30. Plaintiff was eventually taken to the 61st Police Precinct, where excessively tight handcuffs were kept on his wrists for several hours.

31. At the precinct the officers falsely informed employees of the Kings County District Attorney's Office that they had observed plaintiff looting and prepared false paperwork to that effect, including an arrest report.

32. At no point did the officers ever observe plaintiff looting.

33. Sometime during the afternoon of November 1, 2012, Mr. Wheeler was taken to Brooklyn Central Booking.

34. On or about November 3, 2012, plaintiff was arraigned in Kings County Criminal Court where bail was set.

35. Unable to make bail, Mr. Wheeler was taken to Otis Bantum Correctional Center ("OBCC") on Rikers Island.

36. Ramel Wheeler had never before been to Rikers Island.

37. Plaintiff was taken to criminal court several times during his incarceration at Rikers Island.

38. Mr. Wheeler was strip-searched repeatedly while incarcerated at Rikers Island.

39. After spending approximately ten days in custody, Mr. Wheeler was

released from custody and, after repeated court appearances, reluctantly accepted an adjournment in contemplation of dismissal of the criminal charges.

40. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, was unlawfully strip searched, suffered fear, pain, bodily injury, anxiety, embarrassment, humiliation and damage to his reputation.

## FIRST CLAIM
### Unlawful Stop and Search

41. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

42. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched plaintiff without reasonable suspicion.

43. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

44. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

45. Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.


46. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM
### Unreasonable Force

47. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

48. The defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on plaintiff.

49. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM
### Denial Of Constitutional Right To Fair Trial

50. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

51. The individual defendants created false evidence against plaintiff.

52. The individual defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office.

53. In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to a fair

trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

54. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Malicious Abuse Of Process

55. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

56. The individual defendants issued legal process to place plaintiff under arrest.

57. The individual defendants arrested plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to remove men of color from the streets of Coney Island.

58. The individual defendants acted with intent to do harm to plaintiff without excuse or justification.

59. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Deliberate Indifference to Safety

60. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

61. The individual defendants were aware of a risk to plaintiff's safety and failed to act in deliberate indifference to plaintiff's needs.

62. Accordingly, defendants violated the Fourteenth Amendment because they acted with deliberate indifference to plaintiff's safety.

63. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Unlawful Strip Search

64. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

65. The defendants violated the Fourth and Fourteenth Amendments because they unlawfully subjected plaintiff to a strip search without legal justification.

66. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Failure To Intervene

67. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

68. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

69. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

70. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## NINTH CLAIM
### *Monell*

71. Defendant City of New York, through its NYPD, was deliberately indifferent to the constitutional rights of its minority citizens in the aftermath of Hurricane Sandy.

72. NYPD inadequately and improperly planned for the arrival of the storm.

73. During and after the storm, while neighborhoods like Coney Island remained largely out of power and isolated, the NYPD and its officers undertook a

policy and practice of wholesale arrests and sweeps of minority citizens without constitutionally required reasonable suspicion and probable cause.

74. The City and its NYPD failed to adequately train and prepare police officers to carry out their duties in accord with the Constitution following arrival of a major storm. The City was indifferent to the consequences of its action and inaction.

75. This policy directly caused the constitutional violations set forth herein.

76. The City was aware that this policy and practice was unlawful and would result in the arrest of innocent people and was indifferent to the consequences.

77. This policy and practice was the moving force behind plaintiff's injuries.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

DATED:   December 31, 2013
         New York, New York

                                        HARVIS WRIGHT & FETT LLP

                                        _____
                                        Gabriel Harvis
                                        305 Broadway, 14th Floor
                                        New York, New York 10007
                                        (212) 323-6880
                                        gharvis@hwandf.com

                                        *Attorneys for plaintiff*